## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner,  and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court is defendant Roberta Brewster's motion for judgment on the pleadings.  (Doc. 40).  Having been fully briefed, the matter is ripe for disposition.

**Background**

Plaintiff Mary Herman ("Plaintiff") was the Jury Clerk for Defendant Carbon County Pennsylvania, and has been employed by the County for eighteen years. The Jury Clerk position was a full-time position.  Plaintiff was employed by the Carbon County Jury Selection Commission.  This Commission is comprised of three Jury Commissioners; Brenda Ellis ("Ellis"), William Poluka ("Poluka"), and President Judge Richard Webb ("Judge Webb").  During an October 27, 2003 Jury Selection Commission meeting, Judge Webb proposed that the Commission abolish the Jury

Clerk position.  Plaintiff would serve in a newly created position, as a Jury Selection

Commission Clerk.  This position is limited to ten and one half hours per week and

receives ten dollars per hour.  During this meeting, Poluka and Ellis voted against

the proposed change.  Despite the majority vote of the Jury Selection Commission,

Judge Webb advanced a recommendation to the Carbon County Salary Board that

Plaintiff's position be terminated and that she be placed in the newly created part-

time position.  On December 12, 2003, Plaintiff sent a letter to Defendant County

Commissioners, requesting that they decline to implement Judge Webb's proposed

changes.   Plaintiff also openly supported Poluka and Ellis when they spoke with the

media regarding issues before the Jury Selection Commission.  She filed a

complaint against Judge Webb with the Judicial Conduct Board.  On January 5,

2004, acting in accord with the members of the Carbon County Salary Board,

Defendants Court Administrator Roberta Brewster ("Brewster"), County

Commissioner William O'Gurek, County Commissioner Wayne Nothstein, and

County Commissioner Charles Getz voted in favor of implementing Judge Webb's

proposed changes.  Plaintiff was specifically informed by a Carbon County official

that her job was changed in retaliation for Ellis' and Poluka's actions.  A significant

portion of Plaintiff's former job duties were transferred to a woman who is

substantially younger than the Plaintiff.

　　　　Plaintiff filed an amended complaint on May 28, 2004, asserting four causes of

2

action.[1]  First, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 ("section 1983")

arguing that Defendants retaliated against her for her speech in violation of the First

Amendment of the United States Constitution.  Second, Plaintiff asserts a claim

under section 1983 for a violation of her Fourteenth Amendment Due Process

Rights, arguing that her job was terminated for an improper purpose and with

improper procedures.  Third, Plaintiff avers that the defendants violated the

Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. §§ 1421-1428, by terminating

her in retaliation for her support of Poluka and Ellis, and in retaliation for her letter to

the Commissioners.  Fourth and finally, Plaintiff argues that the defendants violated

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 because

they reduced her hours because of her age.

Defendants filed a motion to dismiss.  After the parties briefed the issue, this

court issued a memorandum and order granting the motion to dismiss in part and

denying it in part.  (See Doc. 614).  Defendant Brewster's motion raised six grounds.

She argued that plaintiff could not state a First Amendment retaliation claim because

her speech did not address a matter of public concern, and any speech she made

did not precede the decision to limit her hours.  Second, Defendant Brewster

contended that plaintiff could not state a due process claim because she lacked a

protected interest in her job.  Brewster raised two grounds for dismissing plaintiff's

---

[1]Plaintiff did not include Judge Webb in her suit, perhaps recognizing that he was
protected by judicial immunity.

whistleblower claims: immunity for state officials under the Eleventh Amendment and the inapplicability of the Pennsylvania Whistleblower law to state courts.  As a fifth ground for dismissal, Brewster argued that the court should abstain from the case and allow state courts to address unsettled questions of state law.  Finally, defendant contended that she was entitled to qualified immunity from suit because plaintiff had not alleged that defendant violated any clearly established right.  This court agreed with the defendant on most of her grounds for dismissing the case. While the court found that Brewster was not entitled to qualified immunity and that plaintiff had stated a claim for First-Amendment retaliation, it found that plaintiff's due process and Whistleblower Act claims against Defendant Brewster should be dismissed.

Defendant Brewster appealed the court's decision to the Third Circuit Court of Appeals, arguing that plaintiff had failed to state a claim for First Amendment retaliation and that she was entitled to qualified immunity.  On September 25, 2007, the Third Circuit issued its opinion on this appeal (Doc. 34-2).  In a non-precedential opinion, the Court of Appeals found that this court had properly determined that Defendant Brewster was not entitled to qualified immunity on plaintiff's First Amendment retaliation claim, but that plaintiff had not properly stated the basis for the alleged retaliation.  Plaintiff, the court pointed out, had alleged that "she openly and publicly supported the Jury Commissioners' statements to the media."  (Id. at 5). She did not, however, "allege when these open and public expressions took place"

4

or their "content."  (Id.). Though plaintiff's complaint was insufficient, the court

concluded that "[i]t may be possible that Herman can state a valid claim and she

should be granted leave to amend." (Id.).  Accordingly, the Third Circuit Court

remanded the case to this court with instructions to allow plaintiff to replead her

claim to describe the statements she made to the media.  (Id. at 6).

Plaintiff filed this second amended complaint on November 8, 2007.  (See

Second Amended Complaint (Doc. 36) (hereinafter "Second Amend. Complt.")).

The complaint repeats the allegations of plaintiff's amended complaint, but includes

more detail about the content and context of plaintiff's public statements.  Plaintiff

alleges that she exercised her First Amendment right to free speech by "openly

supporting Commissioners Poluka and Ellis who spoke with the media regarding

some of the issues before the Jury Selection Commission."  (Second Amend.

Complt. at ¶ 28).  According to the complaint, plaintiff's expression including being

pictured in a newspaper photograph "with the Jury Commissioners in the cramped

office space which was given to them after they complained about the inaccessibility

of their previous office for handicapped individuals."  (Id. at ¶ 29).  Captions to

several newspaper articles that included such pictures stated that "'they are

complaining.'"  (Id. at ¶ 30).

After plaintiff filed this second amended complaint, Defendant Brewster filed a

motion for judgment on the pleadings.  (Doc. 40).  The parties then briefed the

motion, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, we  have jurisdiction

under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States.").  We

have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28

U.S.C. § 1367.

**Legal Standard**

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure

12(c) for judgment on the pleadings.[2]  "Under Rule 12(c), judgment will not be

granted 'unless the movant clearly establishes that no material issue of fact remains

to be resolved and that he is entitled to judgment as a matter of law.'" Jablonski v.

Pan American World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (quoting

Society Hill Civic Association v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)).  A court

deciding a motion under Rule 12(c) "must 'view the facts presented in the pleadings

and the inferences to be drawn therefrom in the light most favorable to the non-

moving party.'" Green v. Fund Asset Management, L.P., 245 F.3d 214, 220 (3d Cir.

2001) (quoting Institute for Scientific Info., Inc. v. Goron & Breach, Science

---

[2]Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not
to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for
judgment on the pleadings, matters outside the pleadings are presented to and not
excluded by the court, the motion shall be treated as one for summary judgment and
disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to
present all material made pertinent to such a motion by Rule 56."  FED. R. CIV. P. 12(c).

Publishers, Inc., 931 F.2d 1002, 1004 (3d Cir. 1991)).

**Discussion**

### a. Qualified Immunity

Defendant Brewster argues that she is entitled to qualified immunity based on the facts alleged in plaintiff's amended complaint.  We have already rendered an opinion based on qualified immunity for Defendant Brewster, concluding that she was not entitled to such immunity.  Brewster appealed this decision, and the Third Circuit Court of Appeals affirmed it.  Though plaintiff filed an amended complaint, the allegations that prohibit the application of qualified immunity remain.  Accordingly, we will not again address the qualified immunity issue and deny the motion on the grounds stated in our prior opinion.

### b. First Amendment Retaliation

Defendant asserts that she should be granted judgment on the pleadings on plaintiff's first amendment retaliation complaint, the only claim remaining against her. She contends that plaintiff has not alleged that she suffered first amendment retaliation for protesting the hiring decisions in question.  "'A public employee has a constitutional right to speak on matters of public concern without fear of retaliation.'" Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001)).  Courts, however, limit this right to speech by public employees; they employ a three-part test to determine whether such speech enjoys First Amendment protection against retaliation.  First, they determine

7

whether the speech is "protected." Id. "Purely personal" speech does not qualify for such protection. Id. Instead, "the speech in question 'must involve a matter of public concern.'" Id. (quoting Connick v. Meyers, 461 U.S. 138, 147 (1983)). Second, if the speech in question involves a matter of public concern, "the plaintiff must then 'demonstrate his[/her] interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.'" Id at 413 (quoting Baldassare, 250 F.3d at 195). Third, a plaintiff who meets the first two elements of this test "'must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.'" Id. at 414 (quoting Baldassare, 250 F.3d at 195). An employer can rebut this element by demonstrating that the employment decision would have been the same even without the protected speech. Id.

Here, defendant argues that plaintiff has not alleged that she spoke at all, but instead merely that she appeared in a newspaper photograph with two elected officials who were engaged in a public dispute with the official who allegedly orchestrated the adverse employment actions against her. Defendant contends that none of plaintiff's allegations indicate that she spoke at all, and that she therefore. cannot claim to have engaged in any protected activity. Plaintiff does not respond to this argument, instead arguing that Defendant Brewster was responsible for the retaliation against her as an agent of the President Judge, the true moving force behind the actions about which she complains. Further, even if plaintiff did speak,

8

Brewster argues that she did not speak about a matter of public concern, but instead complained about the conditions of her employment.

As a preliminary matter, we find that a jury could conclude, based on the facts alleged by the plaintiff, that plaintiff engaged in public speech.  The Third Circuit Court of Appeals has found that a First Amendment Retaliation Claim cannot exist when a plaintiff does not admit to speaking, since "'the absence of speech–in fact, its explicit disclaimer by plaintiff–is fatal to the plaintiff's claim.'" Ambrose v. Township of Robinson, 303 F.3d 488, 496 (3d Cir. 2002) (quoting Fogarty v. Boles, 121 F.3d 886, 890 (3d Cir. 1997)).  Still, courts have found that "[t]he First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."  Virginia v. Black, 538 U.S. 343, 358 (2003); see also United States v. Dellinger, 472 F.2d 340, 358 (7th Cir. 1972) (finding that "protected 'speech' is not limited to vocal, verbal, or art-form expression" but that "[p]erhaps we can do no better than a generalization which equates first amendment 'speech' with conduct which makes an offer in the market place of ideas.").  Thus, under the First Amendment, "'[s]peech' is not construed literally, or even limited to the use of words. Constitutional protection is afforded not only to speaking and writing, but also to some nonverbal acts of communication, viz., 'expressive conduct' (or 'symbolic speech')."  Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 158 (3d Cir. 2002).

To determine whether non-verbal conduct is included within the First

9

Amendment, courts examine "whether, considering 'the nature of [the] activity, combined with the factual context and environment in which it was undertaken,' we are led to the conclusion that the 'activity was sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" Troster v. Pa. Dept. of Corrections, 65 F.3d 1086, 1090 (3d Cir. 1995) (quoting Spence v. Washington, 418 U.S. 405, 409-410 (1974)).  That inquiry "is a fact-sensitive, context-dependent" one.  Id.  Here, plaintiff alleges that she engaged in non-verbal conduct by participating in public protest with persons who challenged the policies of the county commissioners.  A newspaper printed photographs of plaintiff engaged in this activity, and plaintiff alleges that these pictures of her public protest led to the adverse employment action against her.  While a jury might conclude after examining the evidence that plaintiff did not engage in any speech, the court's task here is merely to determine whether the pleadings indicate that such speech occurred.  They do.  The Third Circuit Court of Appeals's requirement that we consider context and motive means that a judgment for the defendant would be inappropriate here.

Having found that a jury may conclude that plaintiff engaged in public speech, we must next determine whether plaintiff has alleged that such speech was protected.  To be protected, speech must address a matter of public concern. Determining whether speech addresses a matter of public concern requires an evaluation of "'the content, form, and context of a given statement, as revealed by

the whole record.'" <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1201 (3d Cir. 1988)

(quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 147-48 (1983)).  In a general sense,

courts have found that "speech disclosing public officials' misfeasance is protected

while speech intended to air personal grievances is not."  <u>Swineford v. Snyder</u>

<u>County</u>, 15 F.3d 1258, 1271 (3d Cir. 1994).  "'When a public employee speaks not

as a citizen upon matters of public concern, but instead as an employee upon

matters only of personal interest, absent the most unusual circumstances, a federal

court is not the appropriate forum in which to review the wisdom of a personnel

decision taken by a public agency allegedly in reaction to the employee's behavior.'"

<u>Rode</u>, 845 F.2d at 1201.  Still, a public employee could both raise a personal

employment issue and a matter of public concern, especially when that personal

employment issue addresses a "grave public concern," such as racial prejudice.  <u>Id.</u>

	Here, plaintiff did lose her job and complained about that loss.  She also

alleges, however, that retaliation came because her "open and public" support for

two commissioners who were engaged in disputes about how to operate the jury

selection process, her participation in complaints against a judge and complaints

about the access provided to disabled people in the jury commissioner's office.  In

her complaint, then, plaintiff contends that she spoke on more matters than her

employment.  She allegedly helped bring to public attention corruption in the

judiciary, unfair dealings in the process of establishing juries and apathy about the

interests of disabled people in county offices.  Such behavior amounts to

malfeasance, which constitutes a matter of public concern.  If proved, the facts

alleged in plaintiff's complaint demonstrate that she spoke on a matter of public

concern.

Plaintiff has also alleged facts sufficient for a jury to conclude that her interest

in speaking about alleged corruption in the jury selection process outweighs the

county's interest in promoting efficiency in employee relations.  Corruption is the

opposite of efficiency.  Finally, the complaint states facts by which a jury could

decide that plaintiff's speech was a substantial or motivating factor in the adverse

employment actions against her.  Neither party disputes that defendants reduced

plaintiff's hours as jury clerk for Carbon County from full to part-time.  Plaintiff alleges

that this reduction of hours came in retaliation for plaintiff speech about the

operations of jury selection in the county.  While a jury could find that no facts

support plaintiff's claims, at this stage of the litigation plaintiff has stated facts

sufficient to survive a motion for judgment on the pleadings.

**Conclusion**

For the above-stated reasons, the court will deny defendant's motion for

judgment on the pleadings.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner, and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

    **AND NOW**, to wit, this 11th day of June 2008, Defendant Roberta Brewster's

motion for judgment on the pleadings (Doc. 40) is hereby **DENIED**.

                            **BY THE COURT:**


                            **s/ James M. Munley**
                            **JUDGE JAMES M. MUNLEY**
                            **UNITED STATES DISTRICT COURT**