## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner,  and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court are defendants' motions for summary judgment.  Having been briefed, the matters are ripe for disposition.

**Background[1]**

Plaintiff Mary Herman ("Plaintiff") was the Jury Clerk for Defendant Carbon County, Pennsylvania, and was employed by the County for eighteen years.  The Jury Clerk position was a full-time position.  Plaintiff was employed by the Carbon County Jury Selection Commission.  This Commission was comprised of three Jury

---

[1]Plaintiff did not submit a brief in opposition to the defendants' motions.  As such, the court will relate only briefly the facts of the case in this section.  The court will reference the relevant facts as related in the defendants' statements of material facts in the discussion section of this opinion.

Commissioners; Brenda Ellis ("Ellis"), William Poluka ("Poluka"), and President Judge Richard Webb ("Judge Webb").  During an October 27, 2003 Jury Selection Commission meeting, Judge Webb proposed that the Commission abolish the Jury Clerk position.  Plaintiff would serve in a newly created position, as a Jury Selection Commission Clerk.  This position was limited to ten and one half hours per week and received ten dollars per hour.  During this meeting, Poluka and Ellis voted against the proposed change.  Despite the majority vote of the Jury Selection Commission, Judge Webb advanced a recommendation to the Carbon County Salary Board that Plaintiff's position be terminated and that she be placed in the newly created part-time position.

On December 12, 2003, Plaintiff sent a letter to Defendant County Commissioners, requesting that they decline to implement Judge Webb's proposed changes.   Plaintiff also openly supported Poluka and Ellis when they spoke with the media regarding issues before the Jury Selection Commission.  She filed a complaint against Judge Webb with the Judicial Conduct Board.  On January 5, 2004, acting in accord with the members of the Carbon County Salary Board, Defendants Court Administrator Roberta Brewster ("Brewster"), County Commissioner William O'Gurek, County Commissioner Wayne Nothstein, and County Commissioner Charles Getz voted in favor of implementing Judge Webb's proposed changes.  Plaintiff was specifically informed by a Carbon County official that her job was changed in retaliation for Ellis' and Poluka's actions.  A significant

2

portion of Plaintiff's former job duties were transferred to a woman who is substantially younger than the Plaintiff.

Plaintiff filed an amended complaint on May 28, 2004, asserting four causes of action.  First, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 ("section 1983") arguing that Defendants retaliated against her for her speech in violation of the First Amendment of the United States Constitution.  Second, Plaintiff asserts a claim under section 1983 for a violation of her Fourteenth Amendment Due Process Rights, arguing that her job was terminated for an improper purpose and with improper procedures.  Third, Plaintiff avers that the defendants violated the Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. §§ 1421-1428, by terminating her in retaliation for her support of Poluka and Ellis, and in retaliation for her letter to the Commissioners.  Fourth and finally, Plaintiff argues that the defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 because they reduced her hours because of her age.

Defendants filed a motion to dismiss.  After the parties briefed the issue, this court issued a memorandum and order granting the motion to dismiss in part and denying it in part.  (See Doc. 614).  Defendant Brewster appealed the court's decision to the Third Circuit Court of Appeals, arguing that plaintiff had failed to state a claim for First Amendment retaliation and that she was entitled to qualified immunity.  On September 25, 2007, the Third Circuit issued its opinion on this appeal (Doc. 34-2).  In a non-precedential opinion, the Court of Appeals found that

3

this court had properly determined that Defendant Brewster was not entitled to qualified immunity on plaintiff's First Amendment retaliation claim, but that plaintiff had not properly stated the basis for the alleged retaliation.  Plaintiff, the court pointed out, had alleged that "she openly and publicly supported the Jury Commissioners' statements to the media."  (Id. at 5).  She did not, however, "allege when these open and public expressions took place" or their "content."  (Id.). Though plaintiff's complaint was insufficient, the court concluded that "[i]t may be possible that Herman can state a valid claim and she should be granted leave to amend." (Id.).  Accordingly, the Third Circuit Court remanded the case to this court with instructions to allow plaintiff to replead her claim to describe the statements she made to the media.  (Id. at 6).

Plaintiff filed this second amended complaint on November 8, 2007.  (See Second Amended Complaint (Doc. 36) (hereinafter "Second Amend. Complt.")). The complaint repeats the allegations of plaintiff's amended complaint, but includes more detail about the content and context of plaintiff's public statements.  Plaintiff alleges that she exercised her First Amendment right to free speech by "openly supporting Commissioners Poluka and Ellis who spoke with the media regarding some of the issues before the Jury Selection Commission."  (Second Amend. Complt. at ¶ 28).  According to the complaint, plaintiff's expression including being pictured in a newspaper photograph "with the Jury Commissioners in the cramped office space which was given to them after they complained about the inaccessibility

4

of their previous office for handicapped individuals." (Id. at ¶ 29).  Captions to

several newspaper articles that included such pictures stated that "'they are

complaining.'" (Id. at ¶ 30).

    After plaintiff filed this second amended complaint, Defendant Brewster filed a

motion for judgment on the pleadings.  (Doc. 40).  The court denied that motion on

June 11, 2008 (Doc. 53).  When the parties completed discovery in the case, the

defendants filed motions for summary judgment.  (Docs. 61-62).  They also filed

briefs in support of those motions.  (Docs. 63, 65).  Plaintiff did not file a brief in

opposition to the motions, despite an order by the court (Doc. 66) on January 30,

2009 that she do so.  The motions are therefore now ripe for the court's disposition.

## Jurisdiction

    As this case is brought pursuant to 42 U.S.C. § 1983 and the Age

Discrimination in Employment Act, 29 U.S.C. § 623, we  have jurisdiction  under 28

U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties of the United States.").  We  have

supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. §

1367.

## Legal Standard

    Granting summary judgment is proper if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

5

entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

 In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990).  The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

 In this case, the defendants filed motions for summary judgment and

statements of material facts (See Docs. 61-64), but the plaintiff did not file a brief in

opposition or a counterstatement of material facts.  The court ordered the defendant

to file her materials in opposition to summary judgment, but she failed to do so.

(Doc. 66).  When a party fails to oppose a motion for summary judgment, the court,

"before granting summary judgment . . . must first determine whether summary

judgment is appropriate–that is, whether the moving party has shown itself to be

entitled to judgment as a matter of law."  Anchorage Assocs. v. V.I. Bd. Of Tax

Review, 922 F.2d 168, 175 (3d Cir. 1990).  In making that determination, the court

accepts "'as true all material facts set forth by the moving party with appropriate

record support.'"  Id.  If the burden of proof on a relevant issue lies with the moving

party, "this means that the district court must determine that the facts specified in or

in connection with the motion entitle the moving party to judgment as a matter of

law."  Id.  If the burden of proof lies with the non-moving party, "the district court must

determine that the deficiencies in the opponent's evidence designated in or in

connection with the motion entitle the moving party to judgment as a matter of law."

Id.

**Discussion**

    **a.  Roberta Brewster's Motion**

    The court accepts as true those statements of material facts provided by

Defendant Brewster which have support in the record.  According to those

statements, Brewster served as Court Administrator for Carbon County during the

period in question.   (Defendant's Concise Statement of Material Facts (Doc. 61-4)

(hereinafter "Brewster's Statement") at ¶ 4).   During that period, President Judge

Richard Webb had the sole authority to determine the terms and conditions of

plaintiff's appointment. (Id. at ¶ 3).  Defendant had no authority as Court

Administrator to reduce plaintiff's hours of employment or change the terms and

conditions of her employment.  (Id. at ¶ 25).  She also had no independent authority

to make decisions about the jury clerk's position that plaintiff held, and did nothing to

influence Judge Webb's decision that the job be reduced from full-time to part-time.

(Id. at ¶¶ 26-27).  Brewster also played no role in the Salary Board meeting that

changed the status of plaintiff's job from full-time to part-time.  (Id. at ¶¶ 31, 34).  She

was not a member of that board.  (Id. at ¶ 37).  When Judge Webb refused the Jury

Commission's request that plaintiff be returned to full-time status, Brewster was not

present at the meeting.  (Id. at ¶ 62).

       Defendant Roberta Brewster argues that she is entitled to qualified immunity

because discovery reveals that Brewster played no part in making the decision to

change plaintiff's work status.  Brewster claims that her lack of a role in the decision

entitles her to qualified immunity.  The court notes that the defendant's position is

inconsistent: she argues she is entitled to qualified or quasi-judicial immunity, but

simultaneously contends she was not involved in the decision about which plaintiff

complains.  If plaintiff did not engage in any actions, she does not need any

immunity, whether quasi judicial or qualified.  See Pierson v. Ray, 386 U.S. 547, 554

(1967) (noting that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for *acts* committed within their judicial jurisdiction.") (emphasis added).  In any case, even if the court were to accept as true that plaintiff spoke on a matter of public concern, the court would find that Defendant Brewster did not engage in any retaliatory activity, and thus cannot be liable on plaintiff's claim.  Since the court must accept all of the facts asserted by the moving party that have support in the record as true, the court finds that Defendant Brewster did not have any role in the decision to terminate defendant and therefore cannot be liable on plaintiff's First Amendment retaliation claim.  Since Brewster was not involved in the employment decision that forms the basis of plaintiff's claims, she is entitled to judgement as a matter of law.  The court will therefore grant Defendant Brewster's motion.

**b.  Motion of Carbon County, William O'Gurek, Charles Getz and Wayne Nothstein**

**i.  Individual Defendants**

All of the remaining individual defendants, who were Carbon County Commissioners at the time of the incident, claim that they are entitled to qualified immunity from suit on all of plaintiff's claims.  Qualified immunity establishes that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."

9

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Determining whether qualified

immunity applies is a "two-step process."  Miller v. Clinton County, 544 F.3d 542,

547 (3d Cir. 2008).  The court must first "'decide whether the facts, taken in the light

most favorable to the plaintiff, show a constitutional violation.  If the plaintiff fails to

make out a constitutional violation, the qualified immunity is at an end; the officer is

entitled to immunity.'" Id. (quoting Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir.

2003)).  Second, "[o]nce it is determined that evidence of a constitutional violation

has been adduced, courts evaluating a qualified immunity claim move to the second

step of the analysis to determine whether the constitutional right was clearly

established." Id.

        The court will again accept as true all of the facts alleged by these defendants

which have support in the record.  The evidence indicates that plaintiff was an

employee of the courts, and she was under the supervision and control of the

President Judge and other court employees.  (County Defendants' Statement of

Facts (Doc. ) (hereinafter "County Defendants' Statement" at ¶¶ 14-17).  Though

plaintiff's salary was paid by the County, the County Commissioners had no control

over Herman's job, the duties she performed or her conduct on the job.  (Id. at ¶¶

18-19).  On January 5, 2004, Judge Webb recommended to the Salary Board that

plaintiff's position by changed from full-time to part-time.  (Id. at ¶ 41).  Defendant

O'Gurek did not receive this memo, as he was not yet a county commissioner.  (Id.

at ¶ 42).  President Judge based his recommendation on an analysis that the staffing

10

level was unnecessary.  (Id. at ¶ 44).  He concluded that the manual methods used to update the jury pool were time-consuming and inefficient, and that computer-based methods would reduce the time and cost required for such updates.  (Id. at ¶ 45).  Accordingly, the Judge recommended that the jury clerk position be reduced to a part-time job.  (Id.).  The board based its decision to make the jury-clerk position half-time on this recommendation.  (Id. at ¶ 46).  Judge Webb's decision reducing staffing was consistent with the approach advocated by the Pennsylvania Supreme Court to reduce staffing.  (Id. at ¶ 53).

Defendants' qualified immunity argument focuses on the second of the qualified immunity determinations.  They argue that their vote to reduce plaintiff's position was based on a request from the County Court's President Judge that was supported by an objectively reasonable analysis of the staffing needs of a judge's office, and that such a request did not violate any clearly established law.  The court agrees.  When they acted to reduce the plaintiff's hours and change the nature of her position, the individual defendants were acting pursuant to the request and assurances of the President Judge.  To do so would not appear to any reasonable person to violate a clearly established right.  As such, these legislators are entitled to qualified immunity on plaintiff's First Amendment retaliation claim brought pursuant to Section 1983.  The court will grant their motion for summary judgment on this point.

### ii.  The County

11

### a. First Amendment Retaliation

The county contends that it cannot be liable for First Amendment retaliation against the plaintiff. "'A public employee has a constitutional right to speak on matters of public concern without fear of retaliation.'" Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (quoting Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001)). Courts, however, limit this right to speech by public employees; they employ a three-part test to determine whether such speech enjoys First Amendment protection against retaliation. First, they determine whether the speech is "protected." Id. "Purely personal" speech does not qualify for such protection. Id. Instead, "the speech in question 'must involve a matter of public concern.'" Id. (quoting Connick v. Meyers, 461 U.S. 138, 147 (1983)). Second, if the speech in question involves a matter of public concern, "the plaintiff must then 'demonstrate his[/her] interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.'" Id at 413 (quoting Baldassare, 250 F.3d at 195). Third, a plaintiff who meets the first two elements of this test "'must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.'" Id. at 414 (quoting Baldassare, 250 F.3d at 195). An employer can rebut this element by demonstrating that the employment decision would have been the same even without the protected speech. Id.

Putting aside whether plaintiff actually spoke in this case (defendants insist

12

that she did not), the court finds that plaintiff could not prevail on the third element of

a retaliation claim.  The uncontested evidence recounted above provides the

defendants' reasons for reducing the plaintiff's position to half time.  This explanation

establishes that defendants' change of plaintiff's position was motivated by a desire

to make the jury pool system operate more efficiently.  If the courts adopted a

computerized system of updating the jury lists, plaintiff's full-time position would

become unnecessary.  Thus, defendants have established that the employer's

decision would have been the same even without the protected speech, and plaintiff

could not prevail on this claim.  The court will grant the county defendants' motion on

this point.

### b.  Pennsylvania Whistleblower Statute

The defendants also contend that plaintiff cannot prevail on her claim under

the Pennsylvania Whistleblower Statute, 43 Pa. S. §1421, *et seq.*  Under that

statute, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate

against an employee regarding the employee's compensation, terms, conditions,

location or privileges of employment because the employee . . . makes a good faith

report or is about to report, verbally or in writing, to the employer or appropriate

authority an instance of wrongdoing or waste."  43 Pa. S. § 1423(a).  The Act defines

"waste" as "an employer's conduct or omissions which result in substantial abuse,

misuse, destruction or loss of funds or resources belonging to or derived from

Commonwealth or political subdivision sources."  43 Pa. S. § 1422.  "Wrongdoing"

13

means "a violation which is not of a merely technical or minimal nature of a Federal or State regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  Id.

According to the uncontested facts supplied by the County defendants, plaintiff's report came when she was pictured in an April 2003 news article.  (County Defendants' Statement at ¶ 35).  That news article concerned Carbon County Jury Commissioner's complaints about the Jury Commission Office and the amenities it contained.  (Id.).  The only complaints that plaintiff made concerned the size and physical condition of her office.  (Id. at ¶ 36-37).

The uncontested facts show that plaintiff's complaint was not protected under the Whistleblower statute.  The complaint about the physical condition of her office did not address any "substantial abuse, misuse, destruction or loss of funds or resources" that belonged to the County.  43 P.S. ¶ 1422.  Indeed, plaintiff's complaint actually appears to be aimed at convincing the County to spend more of its resources on the Jury Commission.  The facts also do not indicate that plaintiff offered any report of wrongdoing through the newspaper.  She complained of office accommodations, not that any substantial violation of a state or federal statute or regulation occurred.  See Id.  As such, the evidence indicates that plaintiff could not qualify for the protections of the Whistleblower Statute, and the court will grant summary judgment on that claim.

### c.  Age Discrimination in Employment Act Claims

14

Defendants also seek summary judgment on plaintiffs Age Discrimination in Employment Act (ADEA) claims.  The Age Discrimination in Employment Act (ADEA) prohibits "discrimination against an individual over age 40 with respect to 'compensation, terms, conditions, or privileges of employment, because of an individual's age.'" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991) (quoting 29 U.S.C. § 623(a)).  To recover under the act, "'a plaintiff must prove by a preponderance of the evidence that age was the determinative factor in the employer's decision' at issue." Id.  (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

Lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994).  Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).  If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating

or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Defendants contend that they have articulated a legitimate, non-discriminatory reason for reducing plaintiff's hours.  They acted on the recommendation of the President Judge, who concluded that computerizing jury records would make plaintiff's full-time position unnecessary.  The court agrees that this action, if believed by a jury, would represent a legitimate non-discriminatory reason for defendants' employment action.  Since plaintiff has not offered any facts to dispute these legitimate reasons, the court will grant the defendants' motion on this point as well.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motions for summary judgment.  An appropriate order follows.

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner, and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

**AND NOW**, to wit, this 31st day of March 2009, the defendants' motions for summary judgment (Docs. 61-62) are hereby **GRANTED**.  The Clerk of Court is directed to **CLOSE** the case.

                                                    BY THE COURT:


                                                    s/ James M. Munley
                                                    **JUDGE JAMES M. MUNLEY**
                                                    **UNITED STATES DISTRICT COURT**

17