# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner,  and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are defendants' motions for summary judgment.  Having been fully briefed, the matters are ripe for disposition.

**Background[1]**

Plaintiff Mary Herman ("Plaintiff") was the Jury Clerk for Defendant Carbon County, Pennsylvania, and was employed by the County for eighteen years.  The Jury Clerk position was a full-time position.  Plaintiff was employed by the Carbon County Jury Selection Commission.  This Commission was comprised of three Jury

---

[1]These facts are taken from the plaintiff's amended complaint.  The plaintiff has never filed with the court a statement of material facts that references the relevant portions of the record, as required by Local Rule 56.1.  In the relevant portions of the opinion, however, the court will address the relevant facts cited by all parties.

Commissioners; Brenda Ellis ("Ellis"), William Poluka ("Poluka"), and President Judge Richard Webb ("Judge Webb").  During an October 27, 2003 Jury Selection Commission meeting, Judge Webb proposed that the Commission abolish the Jury Clerk position.  Plaintiff would serve in a newly created position, as a Jury Selection Commission Clerk.  This position was limited to ten and one half hours per week and received ten dollars per hour.  During this meeting, Poluka and Ellis voted against the proposed change.  Despite the majority vote of the Jury Selection Commission, Judge Webb advanced a recommendation to the Carbon County Salary Board that Plaintiff's position be terminated and that she be placed in the newly created part-time position.

On December 12, 2003, Plaintiff sent a letter to Defendant County Commissioners, requesting that they decline to implement Judge Webb's proposed changes.   Plaintiff also openly supported Poluka and Ellis when they spoke with the media regarding issues before the Jury Selection Commission.  The Jury Commissioners also filed a complaint against Judge Webb with the Judicial Conduct Board, and plaintiff contends she "supported" this complaint.  On January 5, 2004, acting in accord with the members of the Carbon County Salary Board, Defendants County Commissioner William O'Gurek, County Commissioner Wayne Nothstein, and County Commissioner Charles Getz voted in favor of implementing Judge Webb's proposed changes.  Plaintiff was specifically informed by a Carbon County official that her job was changed in retaliation for Ellis' and Poluka's actions.

2

According to the plaintiff, a significant portion of Plaintiff's former job duties were transferred to a woman who is substantially younger than the Plaintiff.

Plaintiff filed an amended complaint on May 28, 2004, asserting four causes of action.  First, Plaintiff raises a claim pursuant to 42 U.S.C. § 1983 ("section 1983") arguing that Defendants retaliated against her for her speech in violation of the First Amendment of the United States Constitution.  Second, Plaintiff contends that defendants violated her Fourteenth Amendment Due Process Rights by terminating her employment for an improper purpose and with improper procedures.  Third, Plaintiff avers that the defendants violated the Pennsylvania Whistleblower Law, 43 PA. CONS. STAT. §§ 1421-1428 by terminating her in retaliation for her support of Poluka and Ellis, and in retaliation for her letter to the Commissioners.  Fourth and finally, Plaintiff argues that the defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 by reducing her hours because of her age.

Defendants filed a motion to dismiss.  After the parties briefed the issue, this court issued a memorandum and order granting the motion to dismiss in part and denying it in part.  (See Doc. 28).  Defendant Brewster appealed the court's decision to the Third Circuit Court of Appeals, arguing that plaintiff had failed to state a claim for First Amendment retaliation and that she was entitled to qualified immunity.  On September 25, 2007, the Third Circuit issued its opinion on this appeal (Doc. 34-2).  The Court of Appeals found that this court had properly determined that Defendant

Brewster was not entitled to qualified immunity on plaintiff's First Amendment

retaliation claim, but that plaintiff had not properly stated the basis for the alleged

retaliation.  Plaintiff, the court pointed out, had alleged that "she openly and publicly

supported the Jury Commissioners' statements to the media."  (Id. at 5).  She did

not, however, "allege when these open and public expressions took place" or their

"content."  (Id.). Though plaintiff's complaint was insufficient, the court concluded that

"[i]t may be possible that Herman can state a valid claim and she should be granted

leave to amend." (Id.).  Accordingly, the Third Circuit Court remanded the case to

this court with instructions to allow plaintiff to re-plead her claim to describe the

statements she made to the media.  (Id. at 6).

Plaintiff filed this second amended complaint on November 8, 2007.  (See

Second Amended Complaint (Doc. 36) (hereinafter "Complt.")).  The complaint

repeats the allegations of plaintiff's amended complaint, but includes more detail

about the content and context of plaintiff's public statements.  Plaintiff alleges that

she exercised her First Amendment right to free speech by "openly supporting

Commissioners Poluka and Ellis who spoke with the media regarding some of the

issues before the Jury Selection Commission." (Second Amend. Complt. at ¶ 28).

According to the complaint, plaintiff's expression including being pictured in a

newspaper photograph "with the Jury Commissioners in the cramped office space

which was given to them after they complained about the inaccessibility of their

previous office for handicapped individuals."  (Id. at ¶ 29).  Captions to newspaper

4

that included such pictures stated that "'they are complaining.'" (Id. at ¶ 30).  The

complaint raised four causes of action.  Claim I contends that all of the defendants

violated plaintiff's First Amendment rights by retaliating against her for speaking on a

matter of public concern.  Claim II contends that all of the defendants violated

plaintiff's right to due process before terminating her.  Claim III raises a cause of

action against all defendants for violating plaintiff's rights under the Pennsylvania

Whistleblower Statue, 42 P.S. §§ 1421 et seq.  Claim IV accuses the County of

discriminating against her on the basis of her age in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

　　　After plaintiff filed this second amended complaint, Defendant Brewster filed a

motion for judgment on the pleadings.  (Doc. 40).  The court denied that motion on

June 11, 2008 (Doc. 53).  When the parties completed discovery in the case, the

defendants filed motions for summary judgment.  (Docs. 61-62).  They also filed

briefs in support of those motions.  (Docs. 63, 65).  Plaintiff did not file a brief in

opposition to the motions, despite an order by the court (Doc. 66) on January 30,

2009 that she do so.  Because the plaintiff had failed to file a brief in opposition to

the motion, the court followed the rule in the Third Circuit that "before granting

summary judgment . . . [the court] must first determine whether summary judgment

is appropriate–that is, whether the moving party has shown itself to be entitled to

judgment as a matter of law." Anchorage Assocs. v. V.I. Bd. Of Tax Review, 922

F.2d 168, 175 (3d Cir. 1990).  In making that determination, the court accepts "'as

true all material facts set forth by the moving party with appropriate record support.'"

Id. If the burden of proof on a relevant issue lies with the moving party, "this means

that the district court must determine that the facts specified in or in connection with

the motion entitle the moving party to judgment as a matter of law." Id. If the burden

of proof lies with the non-moving party, "the district court must determine that the

deficiencies in the opponent's evidence designated in or in connection with the

motion entitle the moving party to judgment as a matter of law." Id. The court found

that the defendants were all entitled to summary judgment based on this standard.

(See Doc. 67).

       After the court filed this opinion, the plaintiff filed a motion for reconsideration,

relating that failure to respond to the motions for summary judgment had not been

intentional, but the result of counsel's staffing problems and a family emergency.

(See Doc. 68).  The court granted the motion for reconsideration, allowing the

plaintiff to file a brief in opposition to the motion.  (See Doc. 71). The court also

ordered the plaintiff to file a statement of facts pursuant to Local Rule 56.1.   (Id.).

The court docketed the plaintiff's brief in opposition (See Doc. 70).  Plaintiff, as

ordered, filed a statement of facts.  (See Doc. 72).  This statement of facts, however,

failed to observe the dictates of the Local Rules, because it did not "[respond] to the

numbered paragraphs set forth in the [moving party's] statement, as to which it is

contended that there exists a genuine issue to be tried."  L.R. 56.1. The plaintiff's

statement also failed to "include references to the parts of the record that support the

statements." Id.  Indeed, the purported "statement of facts" simply repeats, nearly verbatim, the allegations in plaintiff's second amended complaint, with no citations to the record. Defendants then filed reply briefs, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 and the Age Discrimination in Employment Act, 29 U.S.C. § 623, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

**a. Motion of Carbon County, William O'Gurek, Charles Getz and Wayne Nothstein**

**i. First Amendment Retaliation**

The county defendants contend that they cannot be liable for First Amendment retaliation against the plaintiff.  "'A public employee has a constitutional right to speak on matters of public concern without fear of retaliation.'" Brennan v. Norton,

8

350 F.3d 399, 412 (3d Cir. 2003) (quoting <u>Baldassare v. New Jersey</u>, 250 F.3d 188, 194 (3d Cir. 2001)).  Courts, however, limit this right to speech by public employees; they employ a three-part test to determine whether such speech enjoys First Amendment protection against retaliation.  First, they determine whether the speech is "protected."  <u>Id.</u>  "Purely personal" speech does not qualify for such protection.  <u>Id.</u> Instead, "the speech in question 'must involve a matter of public concern.'"  <u>Id.</u> (quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 147 (1983)).  Second, if the speech in question involves a matter of public concern, "the plaintiff must then 'demonstrate his[/her] interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees.'"  <u>Id</u> at 413 (quoting <u>Baldassare</u>, 250 F.3d at 195).  Third, a plaintiff who meets the first two elements of this test "'must then show that the protected activity was a substantial or motivating factor in the alleged retaliatory action.'"  <u>Id.</u> at 414 (quoting <u>Baldassare</u>, 250 F.3d at 195).  An employer can rebut this element by demonstrating that the employment decision would have been the same even without the protected speech.  <u>Id.</u>

Putting aside whether plaintiff actually spoke in this case (defendants insist that she did not), the court finds that plaintiff cannot prove that her speech caused the defendants to take any retaliatory action.  In the retaliation context, "the plaintiff is not required to prove 'but for cause' in order to warrant judgment in his favor," but must instead demonstrate that "the exercise of his First Amendment rights played

9

some substantial role in the relevant decision" to shift the burden to the defendant. Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000).  As the speech for which she was retaliated against, plaintiff points to her public support of the jury commissioners in the argument with Judge Webb about the proper functioning of their office.  The plaintiff contends that "given the facts alleged, actions taken against Herman clearly were an act of retaliation."  (Plaintiff's Brief at 12).  She points to what she terms as close temporal proximity between plaintiff's statements in support of the jury commissioners and the reduction in hours she suffered as evidence to meet her burden on these grounds.  The court finds that, whatever the temporal proximity between the dispute between the judge and jury commissioners, plaintiff does not point to any evidence that indicates that plaintiff's speech–such as it was–was a *substantial* factor in the defendants' decision to reduce her hours.

The evidence indicates that plaintiff was an employee of the courts, and she was under the supervision and control of the President Judge and other court employees.  (County Defendants' Statement of Facts (Doc. 63) (hereinafter "County Defendants' Statement" at ¶¶ 14-17).  A letter from President Judge Richard W. Webb mailed on October 11, 2002, indicates that Webb, "as the President Judge and Chairman of the Jury Commission, will exercise authority over all payroll, budgetary, and related matters."  (Exh. 2 to Defendant Brewster's Brief in Support of her motion for summary judgement (hereinafter "Brewster's Brief") (Doc. 64-3)).  Though plaintiff's salary was paid by the County, the County Commissioners had no

10

control over Herman's job, the duties she performed or her conduct on the job. (County Defendants' Statement at ¶¶ 18-19).  On January 5, 2004, Judge Webb recommended to the Carbon County Salary Board that plaintiff's position by changed from full-time to part-time.  (Id. at ¶ 41).  Defendant O'Gurek did not receive this memo, as he was not yet a county commissioner.  (Id. at ¶ 42).  The President Judge based his recommendation on an analysis that the staffing level was unnecessary.  (Id. at ¶ 44).  He concluded that the manual methods plaintiff used to update the jury pool were time-consuming and inefficient, and that computer-based methods would reduce the time and cost required for such updates.  (Id. at ¶ 45). Accordingly, the Judge recommended that the jury clerk position be reduced to a part-time job.  (Id.).  The board based its decision to make the jury-clerk position half-time on this recommendation.  (Id. at ¶ 46).  Judge Webb's decision reducing staffing was consistent with the approach advocated by the Pennsylvania Supreme Court to reduce staffing.  (Id. at ¶ 53).

Plaintiff contends that Judge Webb's stated reasons for changing her work hours and conditions were not his real reasons.  In her statement of facts, plaintiff alleges that she "was specifically informed by a high official of Carbon County that the actions being taken against her were in retaliation for the actions taken by her superiors, the Jury Commissions, against Judge Webb." (Plaintiff's Statement at ¶ 21)).  This statement is adopted, verbatim, from plaintiff's amended complaint. When asked about that statement during her deposition, plaintiff reported that this

11

"high official" was Judge Webb.  (Plaintiff's Deposition, Exh. 3 to Brewster's Brief

(Doc. 64-4) at 55).  In her deposition, plaintiff contended that "Judge Webb" acted to

retaliate against her as part of his dispute with the Jury Commissioners when he

changed her job.  (Id.).

Plaintiff has therefore produced evidence by which a jury could conclude that

Judge Webb sought to reduce her hours in retaliation for her support of the jury

commissioners in their dispute with him.  Judge Webb, however, is not a defendant

in this case.  The relevant question, therefore, is not whether plaintiff's speech was a

substantial factor in Judge Webb's decision to change her hours, but whether

plaintiff's speech was a substantial factor in the county defendants' decision to adopt

Judge Webb's recommendation.  When asked "what evidence" she had that the

commissioners had determined to punish her for the commissioners' speech, plaintiff

admitted that she had no direct evidence that they did so.  (Id. at 67).  At the same

time, however, she contended that Judge Webb told her he had decided to punish

her by cutting her hours, and the county defendants agreed to do so.  (Id.).  In the

same way, the county defendants allowed plaintiff's control and authority in her office

to be undermined by "accepting" the demands and recommendations of the

controller, Defendant Brewster.  (Id. at 68-69).  Plaintiff contends that the county

defendants should have acted to change an intolerable situation, but "just left it go."

(Id. at 74).

Another piece of evidence in the record indicates that the County Defendants

12

may have had an idea of the dispute between Judge Webb and the Jury

Commissioners.  Plaintiff attached a letter to her amended complaint from her

attorney to Defendant Nothstein.  (See Doc. 36-2).  This letter, dated December 12,

2003, complained about Judge Webb's decision to reduce plaintiff's hours.  (Id.).

Plaintiff's counsel pointed out that Judge Webb had overrode the opposition of the

Jury Commissioners and decided to eliminate plaintiff's full-time jury-clerk position in

favor of a part-time one, and argued that Judge Webb's action in ignoring the Jury

Commissioners' wishes violated state law.  (Id.).  The attorney reported that "I fear

that my client is an innocent victim who is being retaliated against because she is

closely associated with Mr. Poluka and Ms. Ellis" who "filed a complaint with the

Judicial Conduct Board against Judge Webb."  (Id.).  While this letter apparently

informs one Defendant Commissioner of plaintiff's allegations that Judge Webb's

staffing recommendations were the result of his alleged desire to retaliate against

the plaintiff, a jury could not find that this letter is evidence that the desire to retaliate

was a substantial factor in the *commissioners'* decision several weeks later to cut

plaintiff's hours.  At best, it is equivocal evidence of Judge Webb's motive.  Plaintiff

has therefore failed to produce any evidence by which a jury could conclude that

plaintiff's protected activity was a substantial factor in the Defendant Commissioners'

decision to alter her pay and working conditions.  Defendants are thus entitled to

summary judgment on plaintiff's retaliation claim.

### ii.  Pennsylvania Whistleblower Statute

13

The defendants also contend that plaintiff cannot prevail on her claim under the Pennsylvania Whistleblower Statute, 43 Pa. S. §1421, *et seq.* Under that statute, "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa. S. § 1423(a). The Act defines "waste" as "an employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." 43 Pa. S. § 1422. "Wrongdoing" means "a violation which is not of a merely technical or minimal nature of a Federal or State regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id.

Plaintiff contends that Herman engaged in whistleblowing by "supporting the Jury Commissioners in their efforts to preserve the integrity of the jury pool." (Plaintiff's Brief at 13). In her statement of facts, plaintiff alleges that Judge Webb acted to eliminate her job because he was angry that plaintiff's supervisors had filed a complaint against him with the Judicial Conduct Board. (Plaintiff's Statement at ¶ 14). She does not cite to any evidence in the record to support this claim or even explain what the complaint contained. At her deposition, plaintiff admitted that the jury commissioners filed the complaint and that she did not sign it. (Plaintiff's Dep. at

14

77).   She also reported that no action occurred on this complaint that she was aware of.  (Id. at 78).   In any case, "[t]he plain intent of the Law is to protect from retaliation employees who make good-faith efforts to alert authorities to governmental waste and wrongdoing."  Podgurski v. Pennsylvania State University, 722 A.2d 730, 732 (Pa. Super. Ct. 1998).   Plaintiff does not allege that *she* helped prepare or file the complaint with the Judicial Conduct Board, but instead merely that she agreed with the contents of that complaint.  Plaintiff has not cited to cases that indicate that expressing support for another's report of wrongdoing constitutes a "good faith effort to alert authorities of governmental waste and wrongdoing."  Id.  Thus, a jury could not find that plaintiff engaged in activity protected by the whistleblower statute by supporting another person's complaint.

Plaintiff also contends that she engaged in activity protected by the statute when her picture appeared in a newspaper article about the space provided to the Jury Commission in the Carbon County Courthouse.  (See Exh. 11 to Brewster's Brief  (Doc. 64-12)).   That news article concerned Carbon County Jury Commissioner's complaints about the Jury Commission Office and the amenities it contained.  (Id.).  The article describes the cramped conditions of the Carbon County Courthouse, which was built in the nineteenth century and "long ago ran out of prime space."  (Id.).  The Jury Commissioners, the story reports, had complained that their third-floor office was inaccessible to disabled people.  (Id.).  The courthouse elevator stopped at the second floor, and access to the third floor could be gained only by a

15

spiral staircase.  (Id.).  After this complaint, the County Commissioners moved the

office to the first floor.  (Id.).  These new "digs" were not ideal.  The eleven-by-seven

foot office left no room to move when plaintiff and the two jury commissioners were

all in the office.  (Id.).  A filing cabinet took up most of the space in the office, leaving

only twenty-eight inches to maneuver when someone opened a cabinet drawer.

(Id.).  No room for visitors with wheelchairs existed in the office until the Jury

Commissioner's chairs were removed.  (Id.).  Commissioners Poluka and Ellis

complained that they had not been warned about the move.  Commissioner Poluka

reported that the condition of the office provided evidence of "what he considers the

shabby treatment" given to the Commission.  (Id.).  Poluka also complained that he

was not invited to speak during Carbon County Government Day, recently held in the

courthouse, even though he was an elected official.  (Id.).  A picture shows the

plaintiff and the two Jury Commissioners in their cramped office.  (Id.).  The caption

to the photograph relates that the three "are complaining about the cramped quarters

and the lack of air circulation that Poluka believes could lead to illness.  (Id.).

A jury could not find that this activity was protected by the Whistleblower

statute either.  The complaint about the physical condition of her office did not

address any "substantial abuse, misuse, destruction or loss of funds or resources"

that belonged to the County.  43 P.S. ¶ 1422.  Indeed, plaintiff's complaint actually

appears to be aimed at convincing the County to spend more of its resources on the

Jury Commission.  The facts also do not indicate that plaintiff offered any report of

16

wrongdoing through the newspaper.  She complained of office accommodations, not

that any substantial violation of a state or federal statute or regulation occurred.

"'Wrongdoing' includes not only violations of statutes or regulations that are 'of the

type that the employer is charged to enforce,' but violations of any federal or state

regulation, other than violations that are 'of a merely technical or minimal nature.'"

Golashevsky v. Dept. of Environmental Protection, 720 A.2d 757, 759 (Pa. 1998).

Here, the newspaper story contains a complaint about working conditions, but does

not allege that those conditions were in violation of any laws.  A jury could only

conclude that the newspaper story concerned the sort of dispute about space and

facilities that occurs every day in government buildings.  The story is not the sort of

report protected by the Whistleblower law.  As such, plaintiff could not qualify for the

protections of the Whistleblower Statute, and the court will grant summary judgment

on that claim.

### iii.  Age Discrimination in Employment Act Claims

Defendants also seek summary judgment on plaintiffs Age Discrimination in

Employment Act (ADEA) claims.  The Age Discrimination in Employment Act (ADEA)

prohibits "discrimination against an individual over age 40 with respect to

'compensation, terms, conditions, or privileges of employment, because of an

individual's age.'" Billet v. Cigna Corp., 940 F.2d 812, 816 (3d Cir. 1991) (quoting 29

U.S.C. § 623(a)).  To recover under the act, "'a plaintiff must prove by a

preponderance of the evidence that age was the determinative factor in the

employer's decision' at issue." Id. (quoting Bartek v. Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

Lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armbruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994).  Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).  If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

The dispute between the parties is whether plaintiff has evidence to overcome the legitimate, non-discriminatory reasons offered by the defendants for their hiring decision.  Defendants argue that they acted on the recommendation of the President Judge, who concluded that computerizing jury records would make plaintiff's full-time position unnecessary.  The court agrees that this action, if believed by a jury, would

18

represent a legitimate non-discriminatory reason for defendants' employment action.

In response to these reasons, the plaintiff argues that "the pleadings indicate that

Herman was in a protected age classification, she was effectively terminated for no

justifiable reason, and then essentially replaced by a substantially younger female.

These allegations establish the elements necessary to prove age discrimination."

(Plaintiff's Brief at 17).[2]   At this point in the litigation, however, the plaintiff's burden

is greater than merely articulating a prima facie case of age discrimination.  If the

defendant produces evidence of a legitimate, non-discriminatory reason for its hiring

decision, the burden shifts back to the plaintiff, who must provide "*evidence* 'from

which a factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons[,] or (2) believe that an invidious discrimiantory reason was more

likely than not a motivating or determinative cause of the employer's action.'" Fakete

v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002) (quoting Fuentes v. Perskie, 32 F.3d

759, 763 (3d Cir. 1994) (emphasis added).  Plaintiff points to no evidence–only

allegations–to meet this burden.  In any case, as recounted above in reference to

plaintiff's retaliation claims, plaintiff has no evidence that the defendant

commissioners made their decision for any discriminatory reasons.  The evidence

indicates only that they ratified Judge Webb's recommendations.  Because plaintiff

has not produced evidence with which she could meet her burden on this claim, the

---

[2]The court notes that such evidence would only prove that plaintiff has a *prima facie* case of age discrimination.

19

court will grant summary judgment to the defendants.

### iv.  Due Process

Finally, plaintiff insists that she had a property interest in her continued employment with the county, and that her firing occurred with due process. "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Thus, "public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process." Gilbert v. Homar, 520 U.S. 924, 928-29 (1997).

The question here, then, is under what terms plaintiff could be terminated.  If plaintiff could only be terminated for good cause, she would have been entitled to at least some process before that termination.  See, e.g., McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir. 2000) (finding that "'an essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.") (quoting Loudermill, 470 U.S. at 542); Dee v. Borough of Dunmore, 549 F.3d 225, 230 (3d Cir. 2008) (finding that since Pennsylvania law provides six specific reasons why a fire fighter could be suspended, plaintiff had a property interested in continued employment and was entitled to due process).

20

In her brief, plaintiff argues that she "served at the pleasure of the Jury Commissioners" and "expected that she could be fired only by the Jury Commissioners, not be Roberta Brewster or by the President Judge." (Plaintiff's Brief at 14). Plaintiff does not, however, point to any contract that she had with the defendants or any tenure right affixed to her position by Pennsylvania law. She merely states that she had an expectation of employment. She thus appears to admit that she was an "at will" employee of the jury commissioners. See THE LAW DICTIONARY (2002) (defining "employment-at-will" as "absent an express contract establishing the terms and conditions of employment, an employment relationship is presumed to be at will, allowing either party to terminate the relationship for any or no reason."). As such, plaintiff has no evidence by which a jury could conclude that she was entitled to due process before her termination, and summary judgment is appropriate on that claim.[3] See Thomas v. Town of Hammonton, 351 F.3d 108, 113 (3d Cir. 2003) (finding that "[o]nce a determination has been reached by reference to state law that an employee 'held [her] position at the will and pleasure fo the city,' that finding 'necessarily establishes that [the employee] had no property interest.'")

---

[3]Since the court has found that none of the county defendants–who made the determination to change the county policy on the jury clerk–can be liable, the county is also entitled to summary judgment. See McMillian v. Monroe County, 520 U.S. 781, 784 (1997) (finding that "a local government is liable under § 1983 for its policies that cause constitutional torts. These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'") (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)).

21

(quoting <u>Bishop v. Wood</u>, 426 U.S. 341, 346 n. 8 (1976)).[4]

**b. Roberta Brewster's Motion**

Defendant Roberta Brewster seeks summary judgment on the only claim remaining against her, plaintiff's claim that Brewster retaliated against her by changing the terms and conditions of her employment after plaintiff spoke on a matter of public concern. According to the facts advanced by defendant, Brewster served as Court Administrator for Carbon County during the period in question. (Defendant Brewster's Concise Statement of Material Facts (Doc. 61-4) (hereinafter "Brewster's Statement") at ¶ 4). During that period, President Judge Richard Webb had the sole authority to determine the terms and conditions of plaintiff's appointment. (<u>Id.</u> at ¶ 3). Defendant had no authority as Court Administrator to reduce plaintiff's hours of employment or change the terms and conditions of her

---

[4]All of the individual defendants besides Defendant Brewster were Carbon County Commissioners at the time of the incident. They claim that they are entitled to qualified immunity from suit on all of plaintiff's claims. Qualified immunity establishes that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Determining whether qualified immunity applies is a "two-step process." <u>Miller v. Clinton County</u>, 544 F.3d 542, 547 (3d Cir. 2008). The court must first "'decide whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. If the plaintiff fails to make out a constitutional violation, the qualified immunity is at an end; the officer is entitled to immunity.'" <u>Id.</u> (quoting <u>Bennett v. Murphy</u>, 274 F.3d 133, 136 (3d Cir. 2003)). Second, "[o]nce it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established." <u>Id.</u>

The court has concluded that no evidence exists by which a jury could find a violation of plaintiff's constitutional rights. As such, no inquiry into whether that right was clearly established is necessary. None of the defendants can be liable on this claim.

employment.  (Id. at ¶ 25).  She also had no independent authority to make

decisions about the jury clerk's position that plaintiff held, and did nothing to

influence Judge Webb's decision that the job be reduced from full-time to part-time.

(Id. at ¶¶ 26-27).  Brewster also played no role in the Salary Board meeting that

changed the status of plaintiff's job from full-time to part-time.  (Id. at ¶¶ 31, 34).  She

was not a member of that board.  (Id. at ¶ 37).  When Judge Webb refused the Jury

Commission's request that plaintiff be returned to full-time status, Brewster was not

present at the meeting.  (Id. at ¶ 62).  In an affidavit, Judge Webb related that "[a]ll of

the actions taken with regard to Mary Alice Herman's position as jury clerk, including

the decision that the jury clerk position be made part-time, were decisions I made as

the President Judge vested with sole supervisory and fiscal responsibility for the

court system I led."  (Affidavit of Judge Webb, Exh. 7 to Defendant Brewster's Motion

(Doc. 64-8)).

Plaintiff does not point to any evidence in the record that contradicts these

facts supplied by Defendant Brewster, but instead relies on allegations without

citations of support to the record.[5]  Indeed, plaintiff admits in her "statement of facts"

---

[5]Local Rule 56.1 provides that "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts, responding to the numbered paragraphs set forth in the statement required [of the moving party], as to which it is contended that there exists a genuine issue to be tried.  Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.  All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  L.R. 56.1.  In this case, plaintiff has not provided any citations to the record, as required by the rule, nor has she addressed the contentions of undisputed facts raised by the defendants in their

that "Defendant Roberta Brewster, as a member of the state judicial personnel system, had no legal authority to assert supervisory control over the Plaintiff, but acted nonetheless to usurp, encroach upon and subsume the work formerly done by the Plaintiff."[6]  (Plaintiff's Statement of Facts at ¶ 6).  Plaintiff therefore admits that Brewster did not make the decisions that changed the conditions of her employment. Those decisions are the subject of plaintiff's retaliation claim.  Indeed, the evidence recounted above indicates that Judge Webb, in conjunction with the salary board, made the decisions in question.   Since Defendant Brewster was not involved in the employment decision that forms the basis of plaintiff's claim against her, she is entitled to judgement as a matter of law.  The court will therefore grant Defendant Brewster's motion.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motions for summary judgment.  An appropriate order follows.

---

motions for summary judgment.

[6]The court notes that this is the only instance in which the plaintiff's statement of facts refers specifically to Defendant Brewster.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ALICE HERMAN,** | : | **No. 3:04cv614** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **COUNTY OF CARBON,** | : | |
| **ROBERTA BREWSTER, Court** | : | |
| **Administrator,** | : | |
| **WILLIAM O. GUREK, County** | : | |
| **Commissioner,** | : | |
| **WAYNE NOTHSTEIN, County** | : | |
| **Commissioner, and** | : | |
| **CHARLES E. GETZ, County** | : | |
| **Commissioner,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

**AND NOW**, to wit, this 6th day of May 2009, the defendants' motions for summary judgment (Docs. 61-62) are hereby **GRANTED**.  The Clerk of Court is directed to **CLOSE** the case.

**BY THE COURT:**


**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**